WILLIAM McPHETERS, petitioner for certiorari, *vs.* JOSIAH
MORRILL.

Penobscot, 1876.—January 11, 1877.

*Poor Debtor. Certiorari.*

A debtor committed to jail without having given bond, and disclosing there
under the provisions of R. S., c. 113, §§ 21 and 22, is not legally entitled to
claim a discharge without paying the amount due the jailor for his support
in jail. Such sum is part and parcel of the jailor's fees.

Whether under our present statutes regulating such proceedings, a petition
for certiorari to quash the record of magistrates sitting to hear the disclo-
sure of a poor debtor can ever be maintained, *quære.*

If it can, the magistrate whose record is in question, as well as the debtor
whose liability to future arrest for the same debt is involved, should be
made parties.

The record only can be brought up; and nothing *dehors* the record can be
proved by the petitioner.

For the correction of a merely harmless error, a writ of certiorari will not be
granted. *Thus,* where a creditor, on account of the erroneous decision of
magistrates in discharging a poor debtor from jail without requiring him to
first pay the jailor for his board, paid it voluntarily himself when not legally
liable, or, even if liable, failed to show that the premature discharge was of
any damage to him; the petition for certiorari to quash the record of the
magistrates was denied.

ON REPORT.

PETITION for certiorari to quash the record of magistrates sit-
ting to hear a poor debtor's disclosure.

*C. A. Bailey,* for the petitioner.

BARROWS, J. It is alleged in the petition that the person
named as respondent was arrested on an execution in favor of the
petitioner on the 15th day of October, 1874, and failing to give
bond was committed to jail; that on the 27th of November he
notified his creditor, the petitioner here, that he would submit
himself to examination before two justices of the peace and quo-
rum at the jail on the 30th of said November, when, after a
disclosure before two justices duly selected he was permitted to
take the poor debtor's oath, and was discharged, "although your
petitioner then and there protested against such discharge, set-
ting forth as his objection thereto the following: that before said
debtor could lawfully be discharged, he must pay the expense of
his keeping from the time of his arrest until his disclosure as pre--

scribed in R. S., c. 113, §§ 21, 22 ; but said justices overruled said objection, and permitted said debtor to go at large without paying the jailor for keeping him from the time of his commitment to the time of his disclosure, whereby your petitioner was obliged to pay the same and was thereby greatly damaged." The party named as respondent not appearing, though notified, the case is reported by the judge sitting at *nisi prius* to be determined by this court upon the facts stated in the petition.

We think the position which the petitioner took before the magistrates was legally correct. The date of the notice shows that the proceedings must have been under and by virtue of §§ 21 and 22, c. 113 ; and § 22 peremptorily requires that the debtor "besides the other fees, shall pay the jailor's fees before he can be discharged." There can be no doubt that this includes compensation for the support of the prisoner while he is in the custody of the jailor. R. S., c. 116, § 9, expressly includes the sum to be received "for the entire support of each prisoner of every description" among the fees which he may lawfully tax. This section comes in part from § 1, c. 284, Laws of 1865, which runs thus : the jailor's fees in the different counties of the state for the entire support of each prisoner . . . . shall be," &c. The word "fees" in these sections is used as synonymous with, and signifies the same as, "charges" in c. 126, Laws of 1862. No change was intended in the revision.

If the debtor prefers to go to jail rather than give bond, or disclose while in the custody of the officer making the arrest, he must pay the sum to which the jailor is entitled for his support as well as other legal charges, before he can rightfully claim to be discharged. But it does not follow that the writ should issue, as prayed for, because of this irregularity in the proceedings of the magistrates. Several difficulties are obvious.

The query suggested by the court in *Pike* v. *Herriman*, 39 Maine, 52 ; and *Ross* v. *Ellsworth*, 49 Maine, 417 ; whether under existing statutes regulating their proceedings a writ of certiorari can ever issue in these cases has never been favorably answered in any case to which our attention has been called. *Furbush* v. *Cunningham*, 56 Maine, 184, 186.

Again supposing this doubt favorably solved ; while we think

that the debtor, whose liability to future arrest for the same debts is involved, ought to be made a party, we think that the magistrates whose record is brought in question should also be made parties. *Worcester & Nashua Railroad* v. *Railroad Commissioners*, 118 Mass. 563. This has heretofore always been done. See cases above cited, and those therein referred to. Moreover it was expressly held in *Pike* v. *Herriman*, and *Ross* v. *Ellsworth*, *upi supra*, that the writ prayed for can present the record only and nothing *dehors* the record can be proved by the petitioner. The record is not before us; probably because the magistrates are not made parties respondent.

But, aside from all this, "the facts stated in the petition" give us no legal assurance that the petitioner was injured by the error into which the magistrates fell. It is true the petitioner asserts that he was thereby obliged to pay his debtor's board in jail; but that was not the legal consequence of any fact stated in the petition. The debtor is primarily as well as ultimately responsible for his own support in jail as elsewhere.

Prior to the statute of 1876, c. 139, the committing creditor was under no legal obligation to pay for his debtor's support in jail, except upon his own response to the request of the jailor made upon the written complaint of the debtor, provided for in R. S., c. 113, § 55, or in cases where the town in which the debtor had his settlement had been called upon and had paid for his support as a pauper. R. S., c. 24, § 26. This condition of the law is expressly recognized by the court in *Spring* v. *Davis*, 36 Maine, 399, where it is held, that, nevertheless, if without such complaint the jailor calls upon the creditor with the knowledge of the debtor, and the creditor assumes the burden of his support, the promise of the debtor to reimburse him may be implied. The same view of the law was taken in *Howes* v. *Tolman*, 63 Maine, 258. When, in 1831, our legislature passed the act, chap. DXX, entitled "an act for the abolition of imprisonment of honest debtors for debt," which was the substratum of our subsequent acts for the relief of poor debtors, they provided in § 14 of said act "that the keeper of the prison shall be entitled to receive the same that is allowed by law for the support of other criminals, for the support of each debtor committed to prison by virtue of the provi-

sions of this act, to be allowed and paid from the treasury of the county where he stands committed, under the direction of the county commissioners."

In 1835, c. 195, § 15, came the provision for the discharge of pauper debtors, if the creditor, after eight day's notice and request, declined to become responsible and pay or furnish security for their support, and this provision has been substantially renewed in the subsequent revisions of the statutes. But, as before remarked, prior to the statute of 1876, the committing creditor was under no legal liability for the support of his debtor in jail; unless he agreed to be responsible for it on the jailor's request, or the debtor had been supported as a pauper by the town where he had his settlement.

Neither of these facts is stated in the petition; and the assertion that the creditor was obliged to pay the debtor's board by reason of the omission of the justices to require the debtor to pay it is a legal *non sequitur*.

*Prima facie* the jailor or the county would be the party to suffer by the justice's error; but they do not complain.

Even if we were at liberty to assume that the creditor was in some way under a legal liability to pay his debtor's board while he remained in jail, it would not necessarily follow that he was injured by the mistake of the justices.

The actual fact may have been quite the reverse. It is not alleged in the petition that the debtor had sufficient means to procure his discharge if the statute requirement had been insisted on; and the only result of different action on the part of the magistrates might have been, his further unavailing detention at an additional expense to the petitioner. The petitioner seems to have had the benefit of the disclosure of his debtor's affairs, which the law contemplates. In no view can it be said that the facts stated in this petition show that the petitioner was injured by the mistake of the justices. The application is to the legal discretion of the court; and the writ will not be granted for the correction of harmless errors. *Furbush* v. *Cunningham,* 56 Maine, 184.

*Petition dismissed without costs.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.